1 3 6 5 3 0 United States of America v. Carter Christian. Arguments not to exceed 15 minutes per side. Mr. Shad for appellate. Good afternoon your honors. May it please the court. Here this afternoon representing Carter Christian and I'd like to reserve three of my minutes for rebuttal this afternoon. There are two issues which I want to try to get to this afternoon. The first is the Rule 11 violation and the second issue deals with the 3B 1.1 enhancement. Turning first to the Rule 11 violation. It's clear. Did he go to trial? Is that in the record anywhere that he's prepared to withdraw the plea and go to trial? It's nowhere in the record that he's prepared to do that. And the reason for that is because no one asked the question. It's kind of like trying to prove that. Well, it's ultimately the district court's fault because it's the district court that has the obligation under Rule 11B to make the inquiry. And it's interesting here because Rule 11B specifically says address the defendant personally. And that's the bottom line here. But counsel throughout the hearing basically said they had no, I mean didn't counsel basically express sort of an agreement that there was no basis for withdrawing the plea? He did not. What he did was he did not even know that Rule 11B provided an out from the plea agreement. He said that in two different spots in the record. The first spot is you find on page 274 of record number 120 which is the sentencing hearing itself where he explains what he told the defendant in terms of what would happen as a result of the court not going along with the $400,000 figure. So he agreed that the stipulation, the Rule 11C stipulation didn't apply any longer? Well, what I'm referring to here is that he informed the district court, the defense counsel did, that he informed the district court that he told the defendant that the only option was that the government wasn't going to have to follow along with the Rule 11 agreement and the court didn't have to either. There's no indication that he ever informed the defendant that he had the right to withdraw the plea. Over and above that we have another point in the record and that is when this former counsel filed a motion for remand with this court and admitted that he never even knew that it was an option under Rule 11 for the withdrawal of the plea in this matter. So on one side we have defense counsel who doesn't even know that under Rule 11 this was an option. But more than that and more importantly than that, so he goes forward making his arguments at sentencing not even knowing that this was an option. That may give the client a basis for an ineffective assistance of counsel claim at some point. Absolutely. But how does it happen here? Well, it happens here because we still have Rule 11. Over and above even if... You have to concede plain air applies, right? Absolutely. Okay, so plain air applies. You have to be substantial injustice and the only way you can do that is to show that he would withdraw the plea. I have to show... And I personally don't care how it happened that this evidence never got in the record. That just proves we can't correct it through plain air and we're going to have to correct it through 2255. If it's the reality that your client wants to withdraw the plea, which one could be suspicious about. Well, let's turn to that last question first. And why would this defendant want to withdraw his plea in this matter? Let's take a look at what happened. This defendant received the top sentence that he could have received. He fared no better by pleading guilty than he would have by going to trial in any event. He ended up receiving. He didn't receive acceptance or response. You have this argument on the leadership enhancement. We'll see how that goes. All right. Well, let me finish my Rule 11 and then we'll move on and we'll see how I win on my leadership enhancement. I didn't say win. I admire you for seizing what you can. Well, the problem here, though, is that if you do the numbers, he doesn't do any better by going to trial or any worse by going to trial. In other words, I don't have to prove. You may be right, but when's the case when we say plain air wins in a setting where we don't know that the fellow's going to withdraw the plea? Does it affect the integrity of the judicial proceedings? That's the bottom line on plain air, right? You would agree entirely with me that there's no plain air if on remand or if today he got up and said, no, I'm not withdrawing the plea. I don't know the answer to the key question. How can we say three and four of the wrongs are satisfied? Two answers to that. First, we have the Mitchell case, which we cited to in the initial brief in this matter, which the remedy was under this exact violation, an 11B5 violation, was to go back to the district court and allow the defendant to choose one of those options, which he had a right to choose under Rule 11. That is the remedy. It's not we remand it so he goes to trial. It's we remand it so he can make a choice, a knowing and voluntary choice to either stick with this plea or withdraw the plea. So that was a plain air case where the court of appeals said we'll supplement the record? That was a plain air case? I could not. They did not cite whether it was plain air or not. I actually went to the court of appeals and district. That's problematic. It is because we don't know what error that was under. Can I suggest you move to the next argument?  So let's go to 3B1. Only because I'm more interested in that one. Okay, let's go to 3B1.1. I'm not speaking for anybody else. So there are several problems with the 3B1.1 enhancement. The one that I pointed out in my supplemental brief is the problem that the court interspersed this improper factor in deciding whether this defendant should receive a leadership enhancement in this case. And the improper factor that was used was the fact that he had been arrested the night before for the same exact conduct that he had pled guilty to earlier. That, and as we admit in our brief, the court certainly can rely on that in fashioning an appropriate sentence. It is a 3553A factor. Let me try and direct you a little bit here. There is testimony that Christian controlled the storage unit and the code, and that's enough for a finding that he managed property. True? I disagree with that. You disagree? I agree with you that he did. There was one person. There were two defendants in this case. One had the code, and one had the key. And so one couldn't act without the other. Okay? So it was a fail-safe. It was, I can't get to these tires without you helping me. You can't get to these tires without me helping you. So he had control. Some control over the property. Over an asset, yes. He had the storage unit. He had the code. Yes. But that is not what 3B1.1 is intended to capture. Because in any case that is before your honors, there is some point in the process where one of the defendants has control over the property. The lowest-level drug dealer has control over the drugs, has control over the money, might know where they put their stash that other co-defendants don't know where it is, but that doesn't make them a leader. What does Section Note 2 say about control of property? That's a softball. Let's see if you hit it. It says that if you have control over the property, you can receive this enhancement. I would agree. No, it doesn't say that. No, it doesn't say that. It says you can get an upward departure. Oh, yeah, absolutely. I'm sorry. Yes. And the court actually cited to that language at the sentencing hearing in terms of he cited to the application note but didn't rely on it for an upward departure. He didn't at all. He applied the two-level enhancement, which comes into play if you manage a person. Absolutely. And then in this case, there was no evidence that he managed a person at all. As a matter of fact— But the government would argue that he managed the co-defendant because he controlled that unit, that locker. Well, again, if it was control, it was co-control, and you're trying to differentiate between co-defendants. Everybody can't be the leader of this thing. I guess this question is really for both of you, but my impression is that the district court thought it didn't make a difference for this enhancement, whether you were managing another person or managing the property. Am I right in reading that? Absolutely. And as a matter of fact, the government in this case— So then the key is that the guideline speaks of managing people, and the note says, well, but you could have a departure. Do you think they mean departure in the traditional sense or variance? It existed prior to Booker's. That language did. So it has to mean departure in the traditional sense. Okay, you're right. Okay, so it has to mean like a 5K type of departure. Absolutely. Yes. And it doesn't say how high you can go either, right? It says upward. Upward could be 1, 2, 3 levels. In this case, we're stuck at 120 months. It's a 0 to 10 case. Why doesn't that—I mean, what's the response to that making it harmless? Well, the judge didn't actually say any of the language that would allow us to make a review of a departure, an upward departure in that case. And obviously the judge was confused all the way around as to this departure because, number one, he kept relying on the conduct the night before. Nobody discussed departure. Right. But, number two, he kept saying that he's only this level so he gets a 2 instead of he could have gotten a 3 or a 4, which that's not even correct either because you only get a 3 or a 4 if there are five or more culpable people involved in the offense. And somehow the judge twice thought that he was making a differentiation between 2 and 3 and 4. But he eventually landed with the right number of people. He did. But I don't know that he knowingly did that. Remind me, did the—you say this is a mistake, and let's say for the sake of this question it was a mistake. Where did the mistake originate? I mean, I should know this. Is this what the PSR suggested? Where did this mistake come from? Well, it was in either the PSR or an addendum to the PSR, one of the two, that the leadership— So there's a probation officer saying mistakenly, in your view, that this enhancement, leadership enhancement, applies if you have control over property. Yes. And the defendant objected, and therefore the trial judge had to address that at the sentencing. Yes. And the government addressed it at sentencing, too. If you take a look at page ID 315, the government says, I'm not going to tell you that he managed people because we don't have any reliable evidence. There's nobody that we feel comfortable enough to put on here to tell you that he managed people, and therefore we're relying on what it says in the PSR. That's what they say on 315. So I'll ask an even bigger softball than Judge Suhari's. I will miss again. A lot of competition. But if you're right on the leadership enhancement, that this has to be sent back to rescore, and then they want to argue variances they can, is the Rule 11 thing back in play? Absolutely. I guess it was easy. Absolutely. Thank you, Your Honor. All right. Thanks. May it please the Court. My name is Brian Coleman, and I represent the United States of America. The defendant's sentence by the district court should be affirmed for the three following reasons. First, the district court did not err when it failed to inform the defendant of his right to withdraw his plea agreement pursuant to Rule 11 because the defendant waived the only issue covered by the Rule 11 agreement. Two, the district court properly applied the aggravating role enhancement, basing that decision on the defendant's testimony during the sentencing hearing. And three, the district court properly considered the mitigating factors presented to the court by the defendant and gave ample support for . . . Why don't we focus on the second point for a little while? Yes, Your Honor. You heard some of the questioning, and I think we're on the same page that the guideline refers to managing people, not property. That's correct, Your Honor. And it seems to me there is some flexibility to do something about someone managing property, but I'm hard-pressed to say that's harmless when the judge doesn't walk through the departure-type stuff. So I'm really struggling with the idea that that could be harmless here. Your Honor, if we are looking at the standard before the court as to the 3B1.1 enhancement, there is support in the record for the court looking to the management of the co-defendant.  I believe . . . one moment, Your Honor. Your Honor, I don't have the specific point, but I do have the quote, Your Honor. Do you really think that's what he was doing? I just don't think that's what he was doing. Well, all I can go by is the court's statements during the hearing, and in the hearing . . . What does the PSR say on this point? I believe that they had a two-point enhancement for management, Your Honor. Of an individual? Yes. Which individual? That's debatable, Your Honor. There are two individuals that could have been at play. The court found the girlfriend was not. That is correct, Your Honor. So the only person left is the co-defendant. Right. I believe the girlfriend could not have been criminally responsible based on the testimony before the court. So all we had to go on was the co-defendant. And I believe the court stated that it is a type of management if you can say yes or if you can say no to a particular person having access to the property. Did the facts show . . . I mean, in the record, did they show management of the co-defendant or did they show more of a partnership or collaborative where these people were acting pretty much equally? I think there are facts to support both, Your Honor. I do believe that obviously both defendants had to get assistance from the other to have access to the stolen property. And once that access was given, specifically by Christian . . . But don't we have to look at some element of direction? I mean, there's somebody who has the ability to direct the activities or call the shots. And the fact that they both needed each other to complete the criminal activity, that doesn't necessarily suggest control or management over the other individual, does it? Well, I do believe in this instance, if we are speaking about the defendant, Christian, and his ability to manage the co-defendant, he could give access to the property or he could say absolutely no. There's no record support for what you just said. The record says that both of them had to do it and there never was an indication that he could refuse co-defendant Lattin. In fact, interestingly, the key question or the key answer when asked about him keeping the keys, he had the key, I had the . . . and there's no word there . . . I didn't ever give him the code because he was . . . and we don't have the rest of that sentence, unfortunately, for whatever reason. So they needed each other is what the transcript on page 43 says. I don't see, and I'm looking for, help me out, where Christian trumps Lattin. Christian's the boss. If anything, I see that Christian signed a false affidavit exculpating Lattin at Lattin's request. To me, that shows that Lattin's in charge, not Christian, if anything, and I can't find anything else. You got something else for me? Your Honor, all I can do is rest on what was stated in the sentencing hearing. I can tell you what you just stated is absolutely correct. It's pinpoint as to what took place. And when we're looking at what the court determined as to whether or not who was the manager of who, I can tell you before this court I am relying specifically on the conversation concerning giving access to the property and being able to affirmatively allow the co-defendant access to that property or to not allow him based on the ability to say yes or no. So if I find that a remand is appropriate, is it going to make any difference in the sentence in this case? Specifically in this instance, if he was not a manager. If we remand for a determination of what? I suppose to put on evidence whether he was a manager of people or not and whether that enhancement should apply or not, or if not, whether an upward departure is appropriate of some level, where do we end up? Do we end up at the same place, or we don't know, so we should remand for a review? I don't know if that's something that we can determine, Your Honor. What I will say... How about the fact that the judge says it's a pretty close question? He did in fact say it was a close question, Your Honor. So under his mass apprehension it was a close question? Yes, yes. I concede that, Your Honor, and what I will say is it's obvious that there are two base level points that come into play with this. I think it's clear what the judge was basing those two level enhancement points on. I think his explanation in the record is clear. Well, your argument, not you necessarily personally, but the government's argument was Christian managed property, therefore he managed people, therefore apply the two levels. I believe we were relying on the court's determination that defendant Christian was basically managing the co-defendant. But the court had to make that determination based on the evidence that was submitted by the government, didn't it? So I don't see how you hand off just to the court because he is making decisions based on the record that you present to him. Yes, Your Honor. What I'll tell you is most of the evidence to support this enhancement came from the defendant himself. I would concede had the defendant not testified, I would probably be done with my argument right now. The defendant would have been better off perhaps. I think the defendant would have been better off, Your Honor, had he not testified. But using that, the defendant's testimony can also be used by this court with the standard to show what the district court relied on when it made its determination. And so I would concede that normally it does not come from the defendant's word of mouth, but in this instance that is where the district court looked at and where they made their determination. But if the court made a legal error, that's not something which is entitled to deference under this circuit. And so the burden... Yes, Your Honor. Your Honor, I... Do you agree that if the management enhancement, supervisor enhancement is problematic and we need to send that back, that there's no reason to get into the Rule 11 or for that matter anything else? I have to say from the government's perspective, it does seem to me kind of wise to figure out, if the guy wants to withdraw his plea, that might change a lot of things. And I suppose if the management enhancement is reversed, that might alter his thinking about changing his plea. They seem kind of integrated to me. To a degree, yes, Your Honor. What I will say is the United States can only go by the record to kind of determine what the defendant wanted to do in this instance. I don't know if it's incredibly... You said he waived Rule 11. Yes, Your Honor. So if he waived Rule 11, if we remand, does he get to go back and readdress that or not? Readdress the... Rule 11. No, set aside. I want to follow up on Judge Sutton's question. Okay. Whether if there's a remand on the proper guideline calculation, is there also a remand for a Rule 11 discussion? I wouldn't believe so, Your Honor. I believe the Rule 11, a part on its own, has been waived by the defendant. But just listen. Maybe, maybe not. I mean that answer does suggest that maybe we should get into whether it's waived. But it just seems very strange to me because if we accept that argument and you win on that argument, it's still all question-begging because if it was waived, it was waived with counsel. And it's just completely teeing up a 2255. And what's going to be the key issue in the 2255? Did he want to withdraw the plea agreement? Because if he didn't, there's no prejudice. And if he did, there is. So we're back to the same place we started. It just seems very funny to me to not let him just say, okay, I want to or I don't. Well, that would be the first thing that the United States was looking for in the record and in the subsequent filings to this court. And it was never discussed whether or not the defendant actually wanted to withdraw his plea. Your Honor, the question is if we remanded, though, that would be an opportunity for the court to find out. Yes, Your Honor. I will say the guys at 2255, I understand that it's the court's opinion that this could be teeing it up. But I do also think that 2255s have a component that involves communications between the defendant and his counsel that I am not privy to. And oftentimes in the context of a 2255, the defendant's understanding relies heavily on discussions that the defense counsel would have had with the defendant. And so that's not something that I could actually ascertain from this juncture. Let me try this on you. Yes, Your Honor. You seem to suggest in your opening that the Rule 11 was waived and that Rule 11 was limited to the discussion of the loss amount and the loss calculation. And there was clearly discussion about that and about everyone agreeing that the trick-or-treat episode ought to be included in the loss calculation. Does that end the inquiry, or do we go back on Rule 11 for a broader inquiry? Well, I think the first inquiry is whether or not the defendant waived the Rule 11 agreement. So in that instance, we would rely on the statements given by defense counsel. Wait, wait, you know what? I think we're talking too much here. We're getting this wrong. How can you have a waiver? Waiver has to be knowing and voluntary. How can it be knowing if the judge didn't tell him he could waive? So that's the end of that story. Of course it's not waived. So we're talking waiver, not forfeiture. If we're talking waiver, which is what forever binds him, he has to know what he's doing. And if the judge didn't tell him he could withdraw the plea, it couldn't have been a knowing waiver. So I think the waiver thing doesn't, I don't know, it just doesn't seem very strong on the merits. Your Honor, the only thing that I would point to is the defendant came in affirmatively stating on the record that the Rule 11 agreement did not even apply. Not only that, the defendant on the record. That seems to prove that not just the district court was not clued into what to do, but nor was the defendant. It was just a merry-go-round. I mean, that all cuts in direction, it seems to me, of getting everyone talking about the right question. Your Honor, I understand that from the record it's very difficult to put your teeth into certain facts before the court. What I do think the court can rely on is the record laid by the defendant. And specifically, I understand your hesitation. He never says, I would withdraw my plea. I agree with that. That's a powerful point on the plain air. Yes, Your Honor. Thank you, Your Honor. All right. Thanks to both of you for your helpful briefs and argument, and particularly for answering some of our practical questions, which both of you were very good at. So thank you very much. I appreciate it, Your Honor. Thank you. I think Mr. Shea wants to use his rebuttal. Oh, does he? I will just say that Judge Donald has a good point, as always, and forgive me for being premature there. The only thing I will say is thank you for taking my rebuttal. I was going to rise up and talk about the waiver issue and how he could have not waived it, but you set it for me better than I could. All right. Well, that's a generous way of explaining why I did what I did. Forgive me. I think now I'll check with Judge Donald. I think we can submit the case. So thanks so much. Forgive me for doing that too early. And the case will be submitted.